Filed 12/6/24 P. v. Thomas CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS THOMAS,<br><br>    Defendant and Appellant. | B333894<br><br>(Los Angeles County Super. Ct. No. SA043366) |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge. Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General for Plaintiff and Respondent.

In 2001, when he was 17 years old, Carlos Thomas shot and killed a rival gang member outside of a liquor store. The jury found Thomas guilty of murder (§ 187, subd. (a)), and found true personal gun use (§ 12022.53, subd. (d)) and gang (§ 186.22, subd. (b)(4)) allegations. The trial court sentenced Thomas to 15 years to life for the murder, plus 25 years to life for the personal gun use enhancement, for a total of 40 years to life in prison. Another panel of this court affirmed the trial court's judgment in 2006.

In August 2023, Thomas petitioned for recall and resentencing pursuant to Penal Code[1] former section 1170, subdivision (d)(1)(A), and *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*). The trial court denied the petition because it found that Thomas's sentence of 40 years to life was not the functional equivalent of life without the possibility of parole (LWOP).

On appeal, Thomas contends that his sentence of 40 years to life was the functional equivalent of LWOP and that the trial court's order should be reversed pursuant to *Heard*.

We affirm the trial court's order.[2]

---

[1] All further statutory references are to the Penal Code.

[2] We deny Thomas's request for judicial notice, filed on March 20, 2024, of documents that the trial court did not consider.

# DISCUSSION

### A. *Law*

Section 1170, subdivision (d)(1)(A) provides, that, with certain exceptions described in that subdivision, "[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." "The petition shall include the defendant's statement that the defendant [meets these criteria], and the defendant's statement that one of the following is true: [¶] (A) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law. [¶] (B) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall. [¶] (C) The defendant committed the offense with at least one adult codefendant. [¶] (D) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation . . . or showing evidence of remorse." (§1170, subd. (d)(2).) "If the court finds by a preponderance of the evidence that one or more of the statements specified in subparagraphs (A) to (D), inclusive, of paragraph (2) is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the

new sentence, if any, is not greater than the initial sentence."
(§ 1170, subd. (d)(5).)

In *Heard, supra*, 83 Cal.App.5th 608, the defendant argued that he was eligible for resentencing under former section 1170, subdivision (d) because his aggregate sentence of 23 years plus 80 years to life in prison was the functional equivalent of LWOP.[3] The Court of Appeal, Fourth District, Division One, held that the statute by its plain language applies only to juvenile offenders sentenced to a term of LWOP and not to juvenile offenders sentenced to an aggregate term that is the functional equivalent of LWOP. However, the court also held that equal protection principles require that juvenile offenders sentenced to de facto LWOP be permitted to petition for recall and resentencing pursuant to section 1170, subdivision (d).

The *Heard* court rejected the People's argument that section 3051, subdivision (b)(3), which entitles a defendant who "was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life" to a youth offender parole hearing in their 25th year of incarceration, had

---

[3] Section 1170 has been amended several times since the defendant in *Heard* petitioned for resentencing. Notably, "[e]ffective January 1, 2022, subdivision (d)(2) of section 1170 was redesignated as subdivision (d)(1) of section 1170. (Stats. 2021, ch. 731, § 1.3.)" (*Heard, supra*, 83 Cal.App.5th at p. 619.) The substance of the relevant portions of the statute has remained unchanged over that time period, however. (*Ibid.*; Stats. 2022, ch. 744 (A.B. 960), § 1, eff. Jan. 1, 2023; Stats. 2023, ch. 131 (A.B. 1754), § 155, eff. Jan. 1, 2024; Stats. 2023, ch. 218 (S.B. 852), § 3, eff. Jan. 1, 2024; Stats. 2023, ch. 560 (A.B. 1104), § 2.5, eff. Jan. 1, 2024.)

" ' "reformed" ' " the defendant's sentence such that it was no longer a de facto sentence to LWOP. (*Heard*, *supra*, 83 Cal.App.5th at p. 628.) The court acknowledged that in *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), our Supreme Court held that, due to retroactive operation of section 3051, Franklin, who was serving a sentence of 50 years to life, was no longer serving a term of LWOP or de facto LWOP. (*Id*. at p. 629.) The *Heard* court explained that *Franklin* was distinguishable "[b]ecause section 1170, subdivision (d)(1)(A), refers to the 'offense for which the defendant *was sentenced* to imprisonment for life without the possibility of parole' (italics added)"—thus, in the context of eligibility for resentencing under section 1170, the *Heard* court disregarded section 3051's provision for a parole hearing within the defendant's expected life span when determining whether his sentence was the functional equivalent of LWOP. (*Ibid*.) The *Heard* court held the defendant, whose aggregate sentence was the functional equivalent of LWOP when it was imposed, was similarly situated to the juvenile offenders sentenced to LWOP and that there was no rational basis for distinguishing between the two groups; equal protection principles required that defendants sentenced to the functional equivalent of LWOP be given the opportunity to petition for resentencing under section 1170, subdivision (d)(1).[4] (*Id*. at pp. 628–634.)

---

[4] The Court of Appeal, Second District, Division Three, joined *Heard* in *People v. Sorto* (2024) 104 Cal.App.5th 435. In *Sorto*, the defendant was sentenced to 10 years plus 130 years to life in prison. (*Id*. at p. 440.) The Court of Appeal, Fourth District, Division One reaffirmed its position in *Heard* in *People*

**B.** *Analysis*

Although in the respondent's brief the People contend that *Heard* was wrongly decided, they have subsequently withdrawn the argument. As a consequence, on appeal the sole question before this court is whether Thomas's aggregate sentence of 40 years to life is the functional equivalent of LWOP, such that he is eligible to petition for relief under section 1170, subdivision (d) pursuant to *Heard*. We conclude the 40 years to life sentence imposed is not a de facto life sentence for Thomas under section 1170, subdivision (d), and that, even assuming *Heard* is correctly decided, Thomas is ineligible for relief.

Thomas asserts that he will not become eligible for parole until he has served 40 years in prison and is 57 years old. He argues that this sentence is equivalent to LWOP under our Supreme Court's opinion in *People v. Contreras* (2018) 4 Cal.5th 349, 368 (*Contreras*)—which held that that a sentence of 50 years to life is the functional equivalent of LWOP—because a 40 years to life sentence does not "contemplate a sufficient period to achieve reintegration as a productive and respected member of the citizenry" as *Contreras* requires. Thomas argues that the United States Sentencing Commission (USSC) has concluded that a sentence exceeding 39 years is the functional equivalent of LWOP (U.S. Sentencing Commission Final Quarterly Data Report (Fiscal Year 2012), at Table 25, Appen. A, pp. 1, 7), and that other states have recognized that sentences similar to his

_____

*v. Bagsby* (Cal. Ct. App., Nov. 21, 2024, No. D083358) 2024 WL 4847683. In *Bagsby*, the juvenile offender was sentenced to 107 years to life. (*Id*. at *1.)

constitute de facto LWOP (*People v. Buffer* (2019) 137 N.E.3d 763, 774 [over 40 years]; *Bear Cloud v. State of Wyoming* (Wyo. 2014) 334 P.3d 132, 142 [45 years]).  Thomas contends that, in light of studies regarding the average life expectancy in prison, he is unlikely to live past his 40-year sentence.

The People respond that, although our Supreme Court has not had occasion to expressly define de facto LWOP, it has offered guidance.  In *Franklin, supra,* 63 Cal.4th 261, the Supreme Court held that 25 years to life is not de facto LWOP, and in *Contreras, supra,* 4 Cal.5th 349, it held that 50 years to life is de facto LWOP.  In *People v. Perez* (2013) 214 Cal.App.4th 49, the Court of Appeal held that a defendant sentenced to 30 years to life, who would be parole eligible at age 47, was "by no stretch of the imagination" sentenced to de facto LWOP.  (*Id.* at p. 58.)  The People argue that under section 3051's youthful offender parole scheme, Thomas will be eligible for parole in May 2025, when he will be 41 years old and significantly younger than the defendant in *Perez.*  The People urge that, even if we do not consider Thomas's eligibility for parole pursuant to section 3051, under his original sentence Thomas will be eligible for parole after serving 40 years when he is 57 years old, which is well within his expected lifetime.  The People further argue that in Colorado, the Legislature has passed ameliorative legislation providing juveniles sentenced to LWOP parole eligibility after 40 years (Colo. Rev. Stat. Ann. § 18-1.3-401, subd. (4)(c)(I)(B)), and in Nebraska and Texas the legislatures have designated the maximum parole eligibility date for juveniles as 40 years (Neb. Rev. Stat. Ann. § 28-105.02; Tex. Rev. Stat. Ann. § 12.31).  The People assert that the stance these states have adopted suggests that, for a juvenile offender, a sentence of 40 years to life provides

a meaningful opportunity to reintegrate into society within the defendant's lifetime and is not de facto LWOP.

We decline to consider the People's argument that Thomas's sentence is not de facto LWOP because, under section 3051, Thomas will be eligible for parole next year at age 41. The People withdrew their argument that *Heard*—which holds that for purposes of determining whether a sentence is de facto LWOP in the context of section 1170 the court considers the sentence imposed without regard to later reductions of the defendant's parole eligibility date—was wrongly decided, and do not offer any reason why section 1170 should be interpreted to support their proposed definition of de facto LWOP in contravention of *Heard*.[5]

We agree, however, that Thomas's 40 years to life is not a de facto life sentence, even giving Thomas the benefit of the metric *Heard* employs. Thomas cites to the USSC's published reports, which designate a sentence of 470 months—just over 39 years—and above as a de facto life sentence. (U.S. Sentencing Commission, Final Quarterly Data Report (Fiscal Year 2012) Table 25, Appen. A, pp. 1, 7.) The USSC's definition does not support Thomas's argument, however. The USSC indicates that 470 months is "a length consistent with the average life expectancy of federal criminal offenders *given the average age of federal offenders*." (U.S. Sentencing Commission, Final Quarterly Data Report (Fiscal Year 2012) Appen. A, p. 7, italics added.) The average age of federal offenders as reported by the USSC in July 2022 is 37 years old. (U.S. Sentencing Commission, Life

---

[5] Moreover, we express no opinion as to whether *Heard* correctly interprets section 1170 with respect to the definition of LWOP, as it is not necessary to our resolution of this matter regardless of the People's concession.

8

Sentences in the Federal System (2022) p. 20.) By this metric, a life sentence is a sentence that will provide for release on or after the offender's average life expectancy of 76 years old. None of the other authorities cited by the parties indicate that a sentence of 40 years to life is de facto LWOP. To the contrary, the legislation the parties have cited supports the conclusion that Thomas's 40 years to life sentence is not de facto LWOP. The South Dakota Supreme Court has also ruled that a sentence requiring the defendant to serve 40 years in state prison prior to parole eligibility at age 55 is not a de facto life sentence. (*State v. Diaz* (S.D. 2016) 887 N.W.2nd 751.) As there is no authority that supports Thomas's position, we decline to hold that his sentence of 40 years to life is the functional equivalent of LWOP. Even if we disregard that Thomas will be eligible for parole at age 41 as *Heard* proscribes and exclude any conduct credits that Thomas may earn during his incarceration, he will be only 57 years old when he has served 40 years in prison. This is a sufficiently young age to permit Thomas to reintegrate into society as a productive and respected citizen.

# DISPOSITION

We affirm the trial court's order denying Thomas's petition for recall of his sentence pursuant to Penal Code section 1170, subdivision (d)(1)(A).

NOT TO BE PUBLISHED.

MOOR, J.

WE CONCUR:

BAKER, Acting, P. J.

KIM (D.), J.